# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| REBECCA RENTZ JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19CV00021 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| SUBARU OF AMERICA, INC., ET AL., | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |
| | ) | |

*Francis H. Casola and J. Walton Milam, III, WOODS ROGERS, PLC, Roanoke, Virginia, for Plaintiff; Warren David Harless and Belinda D. Jones, CHRISTIAN & BARTON, L.L.P., Richmond, Virginia, and C. Bradford Marsh and Ashley C. Webber, SWIFT, CURRIE, MCGHEE & HIERS, LLP, Atlanta, Georgia, for Defendants Denso International America, Inc. and Denso Manufacturing Tennessee, Inc.*

In this products liability case removed from state court, defendants Denso International America, Inc. ("DIAM") and Denso Manufacturing Tennessee, Inc. ("DMTN") have moved to dismiss for lack of personal jurisdiction. I previously granted the plaintiff's request to conduct jurisdictional discovery and allowed the parties to file supplemental briefs on the issue of whether this court can properly exercise personal jurisdiction over DIAM and DMTN. The window for jurisdictional discovery has now closed, the parties have submitted their supplemental briefs with evidence, and the motions are ripe for decision. No party requested a hearing when given the opportunity to do so. For the reasons that

follow, I find that this court lacks personal jurisdiction over DIAM and DMTN and will grant their Motions to Dismiss.

I.

The Complaint alleges that on August 7, 2017, the plaintiff, Rebecca Rentz James, was driving a 2011 Subaru Outback in Tazewell County, Virginia, which she had purchased new from a dealership in Florida in 2011. While making a right turn, the right front fender made brief contact with a tree adjacent to the road, causing minor damage to the vehicle.

Although the vehicle had contacted the tree on the passenger's side, the driver's side curtain airbag deployed, injuring James. James alleges that it was foreseeable to the defendants that such an unnecessary deployment of the airbag posed an unreasonable risk of harm. It is alleged that DMTN manufactured the airbag electronic control unit ("ECU") for James' vehicle and DIAM in turn sold the ECU for installation in James' car.[1] James asserts claims for breach of the implied warranty of merchantability against Subaru (Count I), breach of the implied warranty of merchantability against DIAM and DMTN (Count II), negligence against Subaru (Count III), negligence against DIAM and DMTN

---

[1] It appears that the ECU was sold to Subaru of Indiana Automotive, Inc., which is not a party to this case but is a defendant in a companion case by plaintiff James currently pending in this court and arising out of the same accident, *James v. Subaru Corp.*, No. 1:19CV00030. The other defendant in the present case is Subaru of America, Inc. ("Subaru"). Subject-matter jurisdiction is based upon diversity of citizenship and amount in controversy. 28 U.S.C. § 1332(a).

(Count IV), and failure to warn against all defendants (Count V). The record currently before the court contains the following undisputed facts bearing upon personal jurisdiction over DIAM and DMTN.

Sung Lee, DIAM's senior sales manager, testified as DIAM's corporate representative. He is responsible for DIAM's Subaru-related business in North America. DIAM is a corporation organized under Delaware law and headquartered in Michigan. DIAM does not own any property in Virginia or pay any taxes in Virginia. DIAM does not operate any facility in Virginia and has no employees who live in Virginia. It has purchased goods and services from some vendors that have a physical presence in Virginia.

In 2018, DIAM issued a tax form 1099 indicating payments of $31,515.50 to Roger C. Fairchild, a consultant on vehicle regulatory matters. Fairchild is an attorney licensed in Virginia and is based in Purcellville, Virginia. Forms 1099 from previous years indicate that DIAM paid Fairchild $23,000 in 2017 and $20,122 in 2016.

Lee was unable to testify as to the services provided to DIAM by other vendors with Virginia addresses. He stated that the quantity of documents related to those vendors was so great that he did not have time to review them all prior to

his deposition.[2]  DIAM maintains a publicly accessible corporate website that consumers and businesses in Virginia can access.  The website contains information about the company, but it is not an interactive website and does not allow visitors to submit orders for products.

DIAM designs, engineers, and sells parts to automobile manufacturers, including Subaru.  DMTN manufactures the parts, and the customers generally takes possession of the parts at DMTN's plant in Maryville, Tennessee.  DIAM does not sell products to consumers or end-users; it sells only to manufacturers.

A DIAM subsidiary, Denso Products and Services Americas, Inc. ("DPAM"), sells parts directly to consumers.  A publicly accessible DPAM webpage allows consumers to search for parts.  A consumer in Virginia could purchase parts from the DPAM webpage.  The particular components at issue in this case are not available for sale on the DPAM website.  It is possible to access the DPAM webpage from the DIAM website by clicking through a series of links. The website on which parts can be ordered, however, has a different domain name from the DIAM website and does not contain any link back to the DIAM website. DPAM is a separate legal entity, and while it is a wholly owned subsidiary of DIAM, DIAM does not exercise control over its business operations.

---

[2] The plaintiff asserts that DIAM and DMTN have not fully responded to her discovery requests, but she did not move to compel further responses.

DIAM sells airbag assemblies and sensors to Subaru. DIAM has sold more than two million parts to Subaru. In 2017, DIAM received $279 million in revenue from sales to Subaru and affiliated companies. In 2018, it received $331 million in revenue from sales to Subaru. When Subaru submits orders to DIAM, the orders specify the vehicle model in which the parts are intended to be used. One of those models is the Subaru Outback.

Subaru and DIAM's other customers pick up the parts from the DMTN plant in Tennessee. DIAM generally does not ship parts to customers. However, if a customer required DIAM to ship parts to Virginia, it would. Subaru's Indiana location is the only location in the United States where Subaru vehicles are manufactured. As a matter of common knowledge, DIAM is aware that Subaru dealerships sell automobiles throughout the United States, including in Virginia. Subaru does not tell DIAM where vehicles containing its airbag components will be sold. DIAM generally does not communicate with Subaru dealerships. It does not receive complaints or feedback from consumers or end-users. No Subaru entity contacted DIAM about the accident that is the subject of this case.

The type of components at issue in this case were tested by DIAM in Japan. Along with other companies, DIAM participates in and partially funds a camera monitoring study led by a university in Virginia, and a DIAM engineer traveled to Virginia on one occasion to attend a meeting about the project.

Chris Ramsey, DMTN's senior manager for corporate and business planning, testified as DMTN's corporate representative. When DIAM secures a new order from a customer, DIAM issues an award letter to DMTN, and DMTN then manufactures the parts to the customer's specifications. DMTN does not provide design input. When manufacturing is complete, DMTN sells the units to DIAM, and then DIAM sells the units to the customer at the DMTN dock in Maryville, Tennessee. There may be instances when an order is shipped from the plant in Tennessee to a destination dictated by a customer, but this is not the case with parts manufactured for Subaru.

DMTN has no physical presence in Virginia and no employees who live in Virginia. DMTN has purchased products and services from companies with a physical presence in Virginia. End-user consumers do not contact DMTN directly or purchase parts directly from DMTN.

Ramsey estimated that DMTN manufactures tens of thousands of parts per year for Subaru today and would have manufactured about half as many in 2010 and 2011. DPAM has shipped some DMTN-manufactured parts to dealerships in Virginia, but they were not Subaru dealerships, and the parts were not those at issue in this case. Dealerships in Virginia selling automobiles made by another manufacturer have sent instrument clusters to DMTN, and DMTN has shipped

those instrument clusters back to those dealerships in Virginia. These transactions do not involve Subaru or the airbag components at issue in this case.

The plaintiff argues that the foregoing facts are sufficient to establish personal jurisdiction over DIAM and DMTN in Virginia under the so-called "stream-of-commerce-plus" doctrine. *See, e.g.*, *Germano v. Taishan Gypsum Company, Ltd. (In re Chinese Manufactured Drywall Prods. Liab. Litig.)*, 742 F.3d 576, 588 (5th Cir. 2014); *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012) ("[T]he Supreme Court has rejected the exercise of jurisdiction where a defendant has merely placed a product into the stream of commerce foreseeing that it might ultimately reach the forum state. . . . But where a defendant has targeted the forum with its goods, sufficient contacts exist.") (internal quotation marks and citations omitted). DIAM and DMTN disagree, contending that they have not placed their products into the stream of commerce and that they have not purposefully availed themselves of Virginia law. They therefore argue that this court's exercise of jurisdiction over them would violate the Due Process Clause.

II.

In response to a defendant's challenge to personal jurisdiction, a plaintiff is required to make a prima facie showing that jurisdiction over the defendant is proper. *See Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 226 (4th Cir.

2019). But when the parties conduct jurisdictional discovery and are given the opportunity to present all relevant evidence and argument to the court regarding personal jurisdiction, "the plaintiff must carry the burden to establish personal jurisdiction by a preponderance of the evidence." *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 197 (4th Cir. 2018) (noting that live testimony is not necessarily required). Here, while neither defendant requested an in-person hearing, the parties conducted jurisdictional discovery and were permitted to submit all relevant evidence and argument on the issue of personal jurisdiction. I conclude that this procedure is equivalent to a live hearing and that the plaintiff should be held to the higher preponderance-of-the-evidence standard. Whichever standard is applied, my conclusion would be the same.

For a court to exercise personal jurisdiction over a nonresident defendant, two requirements must be met. *Owens-Illinois, Inc., v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 627 (4th Cir. 1997). First, a statute must authorize service of process on the non-resident defendant. *Id.* Second, the service of process must comport with the Due Process Clause. *Id.* Where the state statute authorizing service of process is coextensive with the Due Process Clause, the two requirements merge, and the proper inquiry is whether exercising personal jurisdiction comports with the Due Process Clause. *Id.* at 627–28. Virginia's long-arm statute providing for service of process extends personal jurisdiction to

the extent permitted by the Due Process Clause. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002); Va. Code Ann. §§ 8.01-328.1(5), 8.01-330. Thus, the proper inquiry here is whether exercising personal jurisdiction over DIAM and DMTN comports with the Due Process Clause.

"A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The standard for determining whether this requirement is met depends on whether the plaintiff seeks to establish specific or general personal jurisdiction. *See id.*

Specific jurisdiction exists where the defendant's contacts with the forum state provide the basis for the suit. *Id.* To determine if specific jurisdiction exists, courts consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks, alterations, and citations omitted). A defendant's contacts with, and

conduct within, the forum State must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

If the defendant's contacts with the forum state are not the basis for the suit, personal jurisdiction must arise from "the defendant's general, more persistent, but unrelated contacts with the state." *Carefirst of Md.*, *Inc*., 334 F.3d at 397. General jurisdiction exists when the defendant's "affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal quotation marks and citation omitted). When the defendant is a corporation, "the paradigm forum for the exercise of general jurisdiction" is its place of incorporation or principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, the plaintiff has rightfully abandoned her initial argument that DIAM and DMTN could be subject to general jurisdiction in Virginia and instead focuses solely on specific jurisdiction.

In a case where defendants have a relationship with one another, a court must evaluate the individual acts of each defendant, not the acts of other, related defendants, when considering whether personal jurisdiction exists. In *Rush v. Savchuk*, 444 U.S. 320, 322–24 (1980), a Minnesota plaintiff sued an Indiana driver in a Minnesota court for a tort that occurred in Indiana. The plaintiff alleged

Minnesota had quasi in rem jurisdiction over the defendant because the defendant's insurance company, which was defending him in the lawsuit, had sufficient contacts with the forum. *Id.* at 325. The Supreme Court disagreed. The Court held that jurisdictional reach over a defendant could not be based solely on the forum contacts of another related party. *Id.* at 332. The Court noted that the "parties' relationships with each other may be significant in evaluating their ties to the forum," but that an exercise of personal jurisdiction under *International Shoe* required an examination of each defendant's individual contacts with the forum. *Id.* Similarly, "it is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005).

The hallmark of specific jurisdiction is that the plaintiff's claims arise out of the defendant's contacts with the forum state. *See Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 660 (4th Cir. 1989) ("Specific jurisdiction involves the exercise of personal jurisdiction over the defendant in an action which arises out of the defendant's contact with the forum."). That is the characteristic that distinguishes specific jurisdiction from general jurisdiction. "Adjudicatory authority is 'specific' when the suit arises out of or relates to the defendant's contacts with the forum." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 923–24 (internal quotation marks, alterations, and citation omitted). "[S]ubmission through contact with and

activity directed at a sovereign may justify specific jurisdiction '*in a suit arising out of or related to the defendant's contacts with the forum*.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality opinion) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)) (emphasis added); *see also Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012) ("*Second*, with purposeful availment established, we require that the plaintiff's claims arise out of activities directed at the forum state.").

"The stream-of-commerce doctrine is not a tool by which a plaintiff may circumvent the Fourth Circuit's 'arises from or relates to' requirement for specific jurisdiction." *Wallace v. Yamaha Motors Corp., U.S.A.*, No. 9:19-CV-0730-DCN, 2019 WL 6170419, at *5 (D.S.C. Nov. 20, 2019). Whether applying the general three-pronged test for personal jurisdiction, *see ESAB Group, Inc.*, 685 F.3d at 391–92, or the much-debated and ill-defined stream-of-commerce test often applied in products liability cases, *see generally J. McIntyre Machinery, Ltd.*, 564 U.S. 873, a defendant's contacts with the forum state that are entirely unrelated to the plaintiff's claims cannot serve as the basis for a proper exercise of personal jurisdiction.

Again, the three consistent requirements for any exercise of specific personal jurisdiction are as follows: (1) the defendant "purposefully availed itself of the

privilege of conducting activities in the State;" (2) "the plaintiff['s] claims arise out of those activities directed at the State;" and (3) "the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quotation marks and citation omitted). The stream-of-commerce-plus test, where a defendant placed an item into the stream of commerce foreseeing that it might end up in the forum state and also took some additional targeted conduct directed at the forum state, addresses only prong one of this three-prong test. *See J. MacIntyre Machinery, Ltd.*, 564 U.S. at 881–82. Prong three does not come into play unless the plaintiff has satisfied prongs one and two. *Consulting Eng'rs Corp.,* 561 F.3d at 279.

James overlooks the key "arises out of" requirement entirely. She attempts to cobble together a small number of contacts with Virginia that have no connection whatsoever with this case — different kinds of parts shipped to dealers of other automobile manufacturers, an unrelated camera study, a passive corporate website — and argues that considering the defendants' large volume of business with Subaru and the common knowledge that Subaru vehicles are sold and driven in Virginia, the defendants should have reasonably anticipated that they could be sued in Virginia. A careful examination of the sparse Virginia contacts attributable to each defendant demonstrates that neither defendant purposefully targeted Virginia in any way that is related to the claims in this case.

## A. DIAM.

DIAM's contacts with Virginia can be summarized as follows. On one occasion in 2017, it shipped one test bench to a customer unaffiliated with Subaru at the customer's location in Blacksburg, Virginia. It helped to fund a camera study at a Virginia university and may have on one unspecified occasion sent one representative to a meeting in Virginia regarding the study. It has purchased unidentified good or services from a number of vendors who have some physical presence in Virginia, although none of these contracts were executed or performed in Virginia. It maintains a passive website containing information about its business that can be accessed by people in Virginia.

Considered in the aggregate, these few scattered contacts do not show purposeful availment. "A defendant's actions that are directed at the forum state in only a random, fortuitous, or attenuated way are insufficient to support jurisdiction." *ESAB Grp.*, 685 F.3d at 392 (internal quotation marks and citation omitted).

Assuming arguendo that DIAM placed the subject parts "into the stream of commerce with the expectation that [they] will be purchased by consumers in the forum State," the plaintiff has not shown "purposeful activity on the part of [DIAM] to establish a meaningful contact with the forum state." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 944 (4th Cir. 1994). The Fourth Circuit

requires that "the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state." *Id.* at 945–46. Such a substantial connection is not present here. Moreover, to the extent that James seeks to impute DPAM's interactive parts-sales website to DIAM, she has not offered any basis for ignoring corporate formalities and imputing the subsidiary's acts to its parent corporation.

Even if I were to find that DIAM's few contacts with Virginia satisfied the first prong of the three-pronged test for specific jurisdiction, the second prong clearly is not met here. DIAM sold Subaru an airbag component in Tennessee, the part was placed into a Subaru Outback that was manufactured in Indiana, and the vehicle was sold to James at a dealership in Florida. The part was present in Virginia because James brought it to Virginia, not because of any purposeful act of DIAM. *See Walden v. Fiore*, 571 U.S. 277, 284 (4th Cir. 2014). None of DIAM's other cited contacts with Virginia bear any relation to the claims in this case. They have nothing to do with the part at issue here, or with Subaru, or with either the vehicle or accident involved in this case. Because James' claims against DIAM do not arise out of or relate to any purposeful acts of DIAM targeted at Virginia, specific personal jurisdiction does not exist in Virginia.

## B. DMTN.

DMTN's contacts with Virginia are even more limited than DIAM's. DMTN's sole contact with Virginia is a program specific to a different automobile manufacturer. Through that program, dealerships in Virginia have sent instrument clusters to DMTN, and DMTN has shipped those instrument clusters back to those dealerships in Virginia. Additionally, James emphasizes that DPAM sells certain DMTN-manufactured parts through a parts-sales website, and those parts could be purchased by people in Virginia.

Again, these facts simply do not amount to the necessary minimum contacts required to show that DMTN purposefully availed itself of the laws and privileges of the Commonwealth of Virginia. As to DMTN, James cannot satisfy the first prong of the test for specific jurisdiction. Even if she could, however, she cannot meet the second prong, as these contacts have nothing to do with her claims in this case. DMTN manufactured a part in Tennessee, which it sold to DIAM in Tennessee. The part was then sold to Subaru in Tennessee and placed in a Subaru Outback in Indiana, and the Outback was sold to James in Florida. The part at issue here is not sold on the DPAM website, and the instrument clusters sent between DMTN and certain Virginia dealerships are used in different kinds of vehicles than the Subaru involved in this case.

Because James' claims against DMTN do not arise out of or relate to any purposeful acts of DMTN targeted at Virginia, specific personal jurisdiction does not exist in Virginia. It is not necessary to address the third prong of the specific jurisdiction test as to either of these defendants because the plaintiff has failed to satisfy the first two prongs.

III.

For these reasons, I conclude that this court cannot constitutionally exercise personal jurisdiction over DIAM or DMTN. Accordingly, it is **ORDERED** that the Motions to Dismiss for Lack of Personal Jurisdiction, ECF Nos. 7 and 9, are GRANTED. Denso International America, Inc. and Denso Manufacturing Tennessee, Inc. shall be terminated as defendants in this case.

ENTER: January 15, 2020

/s/ *JAMES P. JONES*
United States District Judge